IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MEGAN JORDAN | : | |
|        Plaintiff, | : | |
| | : | |
| vs. | : | No. 02-CV-5312 |
| | : | |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | : | |
| | : | |
|        Defendant. | : | |

# ORDER

AND NOW, this _____ day of _____, 2003, upon consideration of plaintiff's Motion to Compel Compliance with Subpoena Served upon Marshall, Dennehey, Warner, Coleman and Goggin, and any response thereto, it is hereby **ORDERED** and **DECREED** that the Motion to Compel is denied.

BY THE COURT:

_____, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MEGAN JORDAN | : | |
|        Plaintiff, | : | |
| | : | |
| vs. | : | No. 02-CV-5312 |
| | : | |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | : | |
| | : | |
|        Defendant. | : | |

**RESPONSE OF DEFENDANT, NATIONWIDE
MUTUAL INSURANCE COMPANY, TO
<u>MOTION TO COMPEL COMPLIANCE WITH SUBPOENA</u>**

For the reasons set forth in the accompanying Memorandum of Law, Defendant, Nationwide Mutual Insurance Company, responds to the Motion to Compel Compliance with Subpoena and respectfully requests that the Motion be denied.

SWARTZ CAMPBELL LLC

_____
James C. Haggerty, Esquire
James C. King, Esquire

Attorneys for Defendant,
Nationwide Mutual Insurance Company

Dated: September 2, 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MEGAN JORDAN | : | |
|        Plaintiff, | : | |
| | : | |
| vs. | : | No. 02-CV-5312 |
| | : | |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | : | |
| | : | |
|        Defendant. | : | |

**<u>CERTIFICATION OF COUNSEL</u>**

    I, James C. Haggerty, hereby certify that the parties have discussed the issues. This, and other, discovery disputes exist. Counsel have jointly agreed to propose a unified method to the Court to address and resolve the issues.

                              SWARTZ CAMPBELL LLC


                              _____
                              James C. Haggerty, Esquire
                              James C. King, Esquire

                              Attorneys for Defendant,
                              Nationwide Mutual Insurance Company

Dated: September 2, 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MEGAN JORDAN : | |
|     Plaintiff, : | |
| : | |
| vs. : | No. 02-CV-5312 |
| : | |
| NATIONWIDE MUTUAL INSURANCE : | |
| COMPANY, : | |
| : | |
|     Defendant. : | |

**MEMORANDUM OF LAW IN OPPOSITION TO
MOTION TO COMPEL COMPLIANCE WITH SUBPOENA**

**I.    INTRODUCTION**

Defendant, Nationwide Mutual Insurance Company ("Nationwide"), respectfully requests that this Court deny the Motion to Compel Compliance with Subpoena. The documents requested in that subpoena are neither relevant to the allegations of bad faith, nor are those documents likely to lead to the discovery of relevant or admissible information. Further, the materials are subject to prior confidentially agreements. Thus, discovery is improper.

Plaintiff seeks extra-contractual bad faith damages from Nationwide as a result of the alleged bad faith in the handling of her underinsured motorist claim. The essence of the case is undervaluation. The arbitration award was higher than the offer. Thus, bad faith damages are sought.[1] Lenny Bowling was one of the claims representatives who participated in the conferencing and evaluation of the file. His deposition was conducted in this case. The plaintiff now seeks the Notes of Testimony of his depositions in all other litigated matters.

---

[1] Interestingly, there were two plaintiffs in the underlying UIM action. The award given to the other plaintiff (sister of plaintiff herein) was less than the offer. The plaintiff is seeking to exclude evidence of this other case.

In this matter, the plaintiff has served a Subpoena upon the law firm of Marshall, Dennehey, Warner, Coleman & Goggin for all other depositions of Lenny Bowling. Defendant, Nationwide, objected to the production in this action of any transcripts of depositions conducted in other actions, at which time plaintiff filed the instant Motion.[2]

## II.  COUNTERSTATEMENT OF FACTS

### A.  VALUATION

In this case, the plaintiff seeks damages premised upon an alleged undervaluation of her claim. She contends that Mr. Bowling was the person controlling the evaluation process. As such, she then concludes that whatever Mr. Bowling did in any other case is relevant. The reasoning defies logic.

In this matter, the plaintiff's claim was conferenced and evaluated. Following the final conference, a value with a range of $145,000.00 to $180,000.00 was assigned to the case. This value was a consensus number for the group. Defendant, Nationwide, denies that its claims adjusters and counsel evaluated plaintiff's claim at "substantially higher values" than its Associate Casualty Director, Lenny Bowling. Nationwide acknowledges that during the process of evaluating plaintiff's claim, a roundtable conference was held at which each claims person involved in the file had an opportunity to offer a range of value of the claim. Given the varying degrees of experience of the participants in the conference, one would expect differing figures regarding the value of the claim. Defendant, Nationwide, denies that the ranges of values expressed at the conference and thereafter were "substantially higher than" Mr. Bowling's range

---

[2] Numerous discovery issues exist. Counsel for the parties have met to discuss the issues. The parties have agreed to request that the Court address all issues at one time. This Motion would be part of that process.

of value.

Defendant, Nationwide, also denies that Mr. Bowling at any time "refused" to approve any offer beyond $75,000.00, in addition to the $87,000.00 received by plaintiff from the tortfeasor. Attached as Exhibit "A" are the relevant pages of Mr. Bowling's deposition testimony. Plaintiff's citations to Mr. Bowling's deposition transcript do not support her contention that Mr. Bowling at any time "refused" to approve such an offer. Mr. Bowling testified that he stated following the roundtable conference at which plaintiff's claim was discussed that "recovery appears quite good. I question the future damage component noted by the claim rep. We can discuss this one next week if you wish, but I would suggest negotiation up to $75,000.00 in addition to the BI payment of $87,000 by the tortfeasor." Exhibit "A" at 94.

Plaintiff also misleadingly suggests that Mr. Bowling questioned the "future damage component" without reviewing any medical records. That suggestion misstates Mr. Bowling's testimony. Mr. Bowling stated that he did not have an independent recollection of discussing the file with the claims manager and claims representative. Exhibit "A" at 79. He noted that the log entries would reflect a file conference where the extent of plaintiff's injuries were shared and discussed. Exhibit "A" at 80. He did not know at the time of his deposition what may have been discussed in the conferencing of the file by the claim representative, but he described the conferencing process. Exhibit "A" at 80. The claim representative brings the whole file to the conference, presents the file with the help of a 15 Point summary that is prepared before the conference, and during the conference, the file is right there in the event any of the participants have any questions about the file. Exhibit "A" at 80.

Mr. Bowling testified that he does not think he reviewed plaintiff's records

independently. Exhibit "A" at 80. Contrary to the misleading facts contained in plaintiff's Motion, counsel for plaintiff acknowledged that Mr. Bowling as the Associate Casualty Director would not be expected to review the medical records, because he would have expected the claims representative and/or the claims manager to bring the pertinent medical issues to Mr. Bowling's attention at the time the file was conferenced. Exhibit "A" at 80-81.

### B. BEST PRACTICES

The plaintiff also seeks to justify the request for depositions on the basis of a rescinded Claims Practice document. Mr. Bowling participated in the drafting of Pennsylvania Best Practices in 1993. That document was superseded and no longer used after January 1, 1996. The plaintiff, whose claim was handled after the accident in 1998, seeks to impose those 1993 standards upon a post 1998 case. In this regard, he is seeking to caste Mr. Bowling as the scapegoat and architect of a scheme to underpay.[3] In this regard, he goes so far as to mislead regarding Mr. Bowling's recollection of the superseded Pennsylvania Best Claims Practices.

Although Mr. Bowling testified that it is "kind of tough to sit here today and tell you what the thinking was at that point," he went on to say that the purpose of the 1993 Pennsylvania Best Claims Practices was to "not over-pay claims. Pay the fair amount. Pay the right amount. If they're claims you don't owe, don't pay them. What we were looking to do was improve claim performance." Exhibit "A" at 147-48. There is nothing "clouded" in Mr. Bowling's recollection regarding his testimony.

Mr. Bowling is a "significant" witness in this litigation only because plaintiff seeks to

---

[3] Counsel for the plaintiff properly realizes that there really was no bad faith in the handling of the claim (mere difference in opinion as to value is not bad faith) and thus tries to create a Lenny Bowling "per se bad faith test" to evaluate the claim.

bring the Pennsylvania Best Claims Practices document into the litigation. That document has no role in this case. Without that document, however, there is no case.[4] Mr. Bowling did not at any time lead the development of Nationwide's claim philosophy. He testified that he authored Pennsylvania Best Claims Practice in 1993, and that by 1994 that document was replaced by corporate Best Claims Practices in 1994 or 1995. Importantly, plaintiff's automobile accident occurred on September 29, 1998. Her underinsured motorist claim in which Nationwide allegedly acted in bad faith was not made until the underlying tort claim was resolved in 2000. Pennsylvania Best Claims Practices had been superseded by corporate Best Claims Practices and was no longer in effect in Pennsylvania in 1998, as Mr. Bowling testified at his deposition. Exhibit "A" at 126-27. Nonetheless, this attempt to drag the past into the present is the sole basis for the request for this discovery. The plaintiff has no case. Therefore, she attempts to make discovery so onerous and oppressive that a settlement will ensue. The tactic is nothing less than litigation blackmail.[5]

### III. LEGAL ARGUMENT

In this case, the plaintiff seeks deposition testimony of Lenny Bowling from other, concluded matters. These cases have nothing to do with the plaintiff. As such, the request, as well as the requests to follow from the plaintiff for other bad faith cases, is simply not relevant to this case. This Court, in North River Ins. Co. v. Greater N.Y. Mut. Ins. Co., 872 F. Supp. 1411, 1412 (E.D. Pa. 1995), denied a plaintiff's request for information regarding other bad faith actions because "those prior bad faith cases, if any, will necessarily involve totally different facts

---

[4] See notes 1 and 3 supra.

[5] Or as the counsel for the plaintiff states, "Bowling for Dollars".

and circumstances from those present here." The court concluded that the discovery of that information could only be described as a "fishing expedition" because "such information not only is highly unlikely to have any relevance to whether or not [defendant] acted in bad faith in the [underlying] lawsuit but does not even appear reasonably calculated to lead to the discovery of admissible evidence." Id. (citing F.R.C.P. 26). See also Adams v. Allstate Ins. Co., 1999 WL 744020 (E.D. Pa. 1999). That rationale is applicable to the case at bar.

In Dombach v. Allstate Insurance Company, 1998 U.S. Dist. Lexis 15611 (E.D. Pa. 1998), this Court precluded discovery of information concerning previous bad faith actions by court, term and number, complaints in those actions, and information regarding punitive damage awards in previous bad faith cases. The defendant argued that the plaintiffs were not entitled to discovery regarding other claims and business practices, because the bad faith statute addresses only whether insurers acted recklessly or in bad faith in a particular case, not whether its business practices are reasonable in general. The court agreed, and noted that the overbroad discovery approach should be directed at determining whether defendant did not have a reasonable basis for making its offer in the present case, and whether defendant knew and recklessly disregarded its lack of a reasonable basis. Id. at 6-7. See also Kaufman v. Nationwide Mut. Ins. Co., 1997 U.S. Dist. Lexis 18530 (E.D. Pa. 1997) (prior bad faith cases necessarily involve different facts and circumstances and therefore are irrelevant to pending bad faith action). That same reasoning should be employed in this case.

This claim arises under the Pennsylvania Bad Faith Statute, 42 Pa. C.S.A. § 8371. That statute allows redress where an insurer acted recklessly or with ill will in a particular case. Here, the plaintiff claims that her case (while not that of her sister) was undervalued. Just as the plaintiff believes that her sister's case is not relevant, allegations of prior bad acts or prior bad

faith necessarily will involve totally different facts and circumstances from those present in this case. Therefore, discovery of that information should be precluded. Consistency in the position of the plaintiff, alone, requires that subpoena be quashed. If the claim of her sister (which was considered at the same time by the same claims personnel is not relevant according to the plaintiff, other claims of other persons evaluated months, if not years before, can have no probative value. Thus, the request for discovery should be denied.[6]

### IV. CONCLUSION

The requested discovery is neither relevant nor material to the case at bar. Therefore, the Nationwide Mutual Insurance Company respectfully requests that the Motion to Compel Compliance with Subpoena be denied.

SWARTZ CAMPBELL LLC

James C. Haggerty, Esquire
James C. King, Esquire

Attorneys for Defendant,
Nationwide Mutual Insurance Company

Dated: September 2, 2003

---

[6] As also noted, any prior matters were resolved pursuant to a confidentiality agreement which precludes disclosure.

-7-

## CERTIFICATION OF SERVICE

I do hereby certify that on this day I am serving the foregoing Response to Plaintiff's Motion to Compel Compliance with Subpoena by hand delivery upon the following counsel of record:

>Charles K. Graber, Esquire
>Ochroch & Graber, P.C.
>318 South 16th Street
>Philadelphia, PA 19102


>SWARTZ CAMPBELL LLC


>_____
>James C. Haggerty, Esquire
>James C. King, Esquire
>Identification Nos. 30003/71498
>1601 Market Street, 34th Floor
>Philadelphia, PA 19103-2316
>(215) 564-5190
>Attorneys for Defendant,
>Nationwide Mutual Insurance Company

Dated: September 2, 2003